DEREK BENTSEN (Cal. Bar No. 232550)
Email: bentsend@sec.gov
TIMOTHY N. ENGLAND (Cal. Bar No. 140332)
Email: EnglandT@sec.gov
STEPHEN T. KAISER
Email: Kaisers@sec.gov
ELIZABETH MARSHALL ANDERSON
Email: MarshallAndersonE@sec.gov
100 F Street, NE
Washington, DC 20549
Telephone: (202) 551-6426 (Bentsen)
Facsimile: (202) 772-9282 (Bentsen)

LOCAL COUNSEL
DANIEL O. BLAU (Cal. Bar No. 305008)
Email: blaud@sec.gov
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3306
Facsimile: (213) 443-1904

Attorneys for Plaintiff
Securities and Exchange Commission

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>NICOLAS ARKELLS,<br><br>Defendant. | Case No. 2:22-cv-5991<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Securities and Exchange Commission (the "Commission") alleges:

## JURISDICTION AND VENUE

1. The Commission brings this action pursuant to Sections 20(b), 20(d),

and 22(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)], and Sections 21(d), 21(e), and 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

2. The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d)(1), and 77v(a)], and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

3. Defendant, directly or indirectly, made use of the means and instrumentalities of interstate commerce or of the mails in connection with the acts, transactions, practices, and courses of business alleged in this complaint.

4. Venue is proper in this District pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27(a) of the Exchange Act [15 U.S.C. § 78aa(a)]. Acts, transactions, practices, and courses of business that form the basis for the violations alleged in this complaint occurred in this District. Defendant lives in this District and his offers and sales of securities took place in this District.

## SUMMARY OF THE ACTION

5. This case concerns Defendant's fraudulent offering and sale of securities of C3 International, Inc. ("C3"), a purported medical cannabis company, to investors. From July through December of 2018, Defendant offered and sold approximately $477,500 worth of C3 securities through material misstatements he made and disseminated to at least six investors, who lost all of their investments. C3 and its principals paid Defendant a total of $66,205 in commissions on those sales.

6. Defendant provided prospective investors with documents created by C3's CEO Steele Smith that contained misstatements that Defendant knew, or was reckless in not knowing, were materially false and misleading. For example, Defendant provided investors with financial reports that falsely showed tens of millions of dollars in revenue, profits and cash flows for C3, when he knew that the company had no cannabis growing facility, products or revenue. In addition,

Defendant disseminated his own falsehoods to prospective investors, falsely claiming that C3 had received $30 million in funding from financial backers, even though he knew at the time that this was untrue and there was no such deal.

7. Defendant also aided and abetted C3's and Steele Smith's securities fraud violations by the acts and practices mentioned above.

8. Defendant offered and sold C3 stock without a registration statement with the Commission being in effect. In addition, there was no exemption from registration.

9. Defendant also was not registered as a broker-dealer, as is required for those offering securities to investors like Defendant did here.

10. In this action, the Commission seeks a permanent injunction prohibiting future violations of the federal securities laws by Defendant and an injunction permanently enjoining Defendant from participating, directly or indirectly, in the issuance, purchase, offer, or sale of any security. The Commission also seeks an order for Defendant to disgorge his ill-gotten gains plus prejudgment interest, and an order imposing a civil penalty on Defendant.

## THE DEFENDANT

11. **Nicolas Arkells,** age 33, is a resident of Lawndale, California. From June through December 2018, he was employed as C3's nominal "Chief of Strategy and Business Development." He is listed as a principal with a purported real estate investment firm in Redondo Beach, California. He does not hold any securities licenses and has never been registered as or associated with a registered broker-dealer.

## RELATED INDIVIDUALS AND ENTITY

12. **C3 International, Inc. ("C3")** is a private, California-based corporation formed in November 2011 with its purported principal place of business in Garden Grove, California. On September 28, 2021, the Commission filed a civil lawsuit against C3 International Inc., Steele Clarke Smith III and Theresa Smith in the

1 | Central District of California, *SEC v. C3 International, Inc., et al.* (8:21-cv-1586-CAS-PD). That case is currently pending.

13. **Steele Clarke Smith III ("Steele Smith")**, age 53, is believed to currently reside in Garden Grove, California. He is the co-founder of C3 and C3 Patients Association. He is the CEO, Secretary, CFO, and Director of C3 according to the certificate filed with the California Secretary of State. On September 28, 2021, The Commission filed a civil lawsuit against C3 International Inc., Steele Clarke Smith III and Theresa Smith in the Central District of California, *SEC v. C3 International, Inc., et al.* (8:21-cv-1586-CAS-PD). That case is currently pending.

14. **Theresa Smith**, age 60, is believed to currently reside in Garden Grove, California and is the wife of Steele Smith. She is the co-founder of C3 and is its President. On September 28, 2021, the Commission filed a civil lawsuit against C3 International Inc., Steele Clarke Smith III and Theresa Smith in the Central District of California, *SEC v. C3 International, Inc., et al.* (8:21-cv-1586-CAS-PD). That case is currently pending.

## FACTS

### A. Defendant Offered and Sold C3's Securities by Means of Material Misstatements and Omissions

15. Beginning in at least July 2018 and continuing through at least December 2018, Defendant offered and sold C3 stock to investors. Defendant provided documents drafted by Steele Smith, including C3 business summaries and financial projections to prospective investors, and made oral and written statements to those same individuals, including by telephone and email.

16. Defendant raised approximately $477,500 for C3 from at least six investors, who lost all of their principal invested in C3.

17. The contents of the C3 documents Defendant disseminated to investors, including business summaries and financial projections, were created by Steele Smith. Defendant reviewed the documents before sending them to investors and was

aware of their contents. As further described below, Defendant knew or was reckless in not knowing that the statements made in the documents he disseminated to investors were materially false and misleading.

18. Defendant also made other material misrepresentations and omissions to investors and potential investors.

### 1. Defendant Disseminated C3's and Steele Smith's Misrepresentations About C3's Business

19. In June 2018, Steele Smith hired Defendant to serve as C3's "Chief of Strategy and Business Development." In that role, Defendant solicited, through emails and by telephone, multiple prospective investors in various states to buy stock in C3. Purportedly, C3 manufactured and sold a cannabis pill called "Idrasil" in California. Defendant provided investors promotional materials Steele Smith created about C3's business. He also sent investors payment instructions and private placement memoranda to facilitate their investment.

20. When hired, and during his six months at C3, Defendant understood that C3 had no current business. Steele Smith explained to him at his hiring that C3 had no business operations, manufacturing facility, products or current revenue.

21. Despite this knowledge, Defendant solicited investors for C3 by disseminating false and misleading documents created by Steele Smith designed to show C3 was a successful, sophisticated company with existing operations and prospects for huge financial growth. Defendant read those documents before sending them to prospective investors. The documents included false statements about the company and financial projections for revenue, profits and cash flow that had no basis in reality.

22. For example, on or about July 31, 2018, Defendant emailed a prospective investor Steele Smith's financial projections for C3 showing a minimum of $75 million in gross revenue from the sale of Idrasil in California alone. Defendant wrote in his email to the investor, which attached Steele Smith's

documents, that "these numbers are very conservative" and stated, "[u]ltimately, I think the stock will appreciate well above its face value." Defendant also attached an investor presentation deck created by Steele Smith that falsely claimed C3 had an "international network of physicians, telemedicine networks, suppliers … consultants, strategic networks" and "established patient networks in every state." In reality, none of these things were true.

23. The next day, Defendant forwarded to the prospective investor an email from Steele Smith that showed C3 earning $7.7 million in revenue in June 2018 and each month of 2018 thereafter. It also showed that C3 would generate revenue of $54 million in the current year of 2018, even though C3 was selling no product and the year was more than half over.

24. After reviewing these documents and speaking with Steele Smith and Defendant, a prospective investor emailed Defendant to indicate he would like to invest $100,000 in C3. After the investor sent the money, Steele Smith misappropriated the investor's funds, using about $40,000 as a down payment on a Jeep Trackhawk for himself.

25. Between July and December of 2018, Defendant emailed these financial projection documents and investor presentation decks - which contained Smith's and C3's misrepresentations - that were reviewed by at least six investors. All six invested in C3 and lost all of their invested funds, a total of $477,500.

26. The statements Defendant disseminated to investors were material because they went to the heart of the investments, namely the likelihood that investors would see a large return for their investment.

    **2.**     **Defendant Misrepresented to Investors that C3 Was Receiving Funding from a Private Equity Company**

27. In addition, Defendant disseminated his own falsehoods to at least two of the six investors. While at C3, he learned that C3 was in negotiations to be

partially acquired by a private equity company. Defendant participated in some of the negotiations and was aware that they did not result in a signed agreement or transfer of money to C3.

28. Despite this knowledge, Defendant made false claims to at least two of the investors that C3 had an agreement to receive, and did receive, a $30 million infusion of capital. For example, on September 11, 2018, he falsely told a prospective investor in a telephone call that a private equity group had given $30 million to C3 for a 20% stake in the company and that C3's stock would go up 8-10 times in value during the coming year. Because of this and similar misrepresentations made by Defendant, the investor sent $250,000 to C3 and lost his entire investment.

29. Defendant also drafted scripts for other C3 employees to use with prospective investors that falsely claimed, "[w]e currently are in the process of receiving $30 million in capital from our financial backers," and talking points that falsely stated, "we have a signed agreement to receive a total of $30 million in funding."

30. The statements Defendant made to investors were material because they went to the heart of the investments, namely the likelihood that investors would see a large return for their investment.

### 3. Defendant Received Commissions for His Fraud

31. C3, through Theresa Smith, paid Defendant commissions based on the monetary contributions of five of the six investors he successfully solicited. In total, Defendant received a total of $66,205 in commissions.

### B. Defendant Aided and Abetted Steele Smith's and C3's Securities Fraud Violations

32. As set forth in detail in the Complaint in *SEC v. C3 International, Inc., et al.*, Steele Smith, or others acting at his direction, provided documents including C3 business summaries and financial projections to prospective investors, and made

oral and written statements to them that were materially false and misleading. These included financial projections that lacked any basis in reality. The complaint alleges that Steele Smith knew that sales of Idrasil never earned more than $57,000 in any year. It also alleges that Steele Smith was aware that Idrasil pills were no longer being manufactured by 2015 and there were no plans to make more.

33. During the time Defendant worked for C3, Steele Smith (and through him, C3) created investor presentations and financial projections designed to defraud prospective investors, and sent those documents to Defendant to disseminate to them. Those documents contained misstatements that were materially false and misleading as described above. As set forth above, at least six of those investors sent money to C3 and lost their entire investment. Steele Smith and C3 therefore violated the anti-fraud provisions of the federal securities laws.

34. As set forth above, Defendant knew, or was reckless in not knowing, of Steele Smith's and C3's primary securities fraud violations, and substantially assisted in them by contacting prospective investors, disseminating Smith's and C3's fraudulent documents to them, and by sending them payment instructions and private placement memoranda to facilitate their investments.

C. **Defendant Offered and Sold C3 Stock in Violation of the Securities Registration Requirements**

35. Defendant offered and sold C3 stock to investors. Defendant solicited investors in states including California, Colorado, Florida and Maryland. Investors paid for the C3 shares, at prices ranging from $1 to $100, with U.S. dollars through wires or checks. In exchange for their funds, C3 sent nearly all investors stock certificates that showed the number of shares purchased.

36. The C3 shares offered and sold by Defendant are securities. It is unlawful under the federal securities laws to offer or sell securities unless a registration statement is filed and is in effect, unless the offer or sale falls within an exemption to the registration requirement. Defendant offered and sold these

securities from at least July through December 2018. No registration statement was ever filed with the Commission for the offer and sale of C3 securities.

37. No exemptions from registration applied to the C3 offering. The C3 offering involved a general solicitation of investors and was made to investors throughout the United States. Defendant took no steps to verify investors' accredited investor status.

38. During the offering, investors sent funds to C3's bank account to purchase the stock.

39. Defendant directly promoted the C3 offering through calls and emails to prospective investors. He also sent investors payment instructions and private placement memoranda to facilitate their investments.

40. As a result of his actions, Defendant is liable for these registration violations because he directly offered and sold C3 stock and was a necessary participant and substantial factor in its offer and sale.

## FIRST CLAIM FOR RELIEF

**Fraud in Connection with the Purchase or Sale of Securities**

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5**

41. The Commission realleges and incorporates by reference paragraphs 1 through 40 above.

42. Defendant, in selling C3 securities to investors, made misstatements regarding C3's purported receipt of $30 million in funding. He also disseminated to investors false statements created by Steele Smith and C3 that he knew or was reckless in not knowing were materially false and misleading.

43. By engaging in the conduct described above, Defendant directly or indirectly, in connection with the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce, or the mails, with scienter:

    (a) Employed devices, schemes, or artifices to defraud;

    (b) Made untrue statements of material facts or omitted to state

material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and

(c) Engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, including purchasers and sellers of securities.

44. By reason of the foregoing, Defendant violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## SECOND CLAIM FOR RELIEF

### Fraud in the Offer or Sale of Securities

### Violations of Sections 17(a)(1), (2), and (3) of the Securities Act

45. The Commission realleges and incorporates by reference paragraphs 1 through 40 above.

46. Defendant, in the offer or sale of C3 securities to investors, made misstatements regarding C3's purported receipt of $30 million in funding. He also disseminated to investors false statements created by Steele Smith and C3 that he knew or was reckless in not knowing were materially false and misleading. Defendant obtained money by means of the fraud through his receipt of commission payments for the investors that he defrauded.

47. By engaging in the conduct described above, Defendant, directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails:

(a) With scienter, employed devices, schemes, or artifices to defraud;

(b) With scienter or negligence, obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

(c) With scienter or negligence, engaged in transactions, practices, or

courses of business which operated or would operate as a fraud or deceit upon the purchaser.

48. By reason of the foregoing, Defendant violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

### THIRD CLAIM FOR RELIEF

### Aiding and Abetting

### Violations of Section 17(a) of the Securities Act

49. The Commission realleges and incorporates by reference paragraphs 1 through 40 above.

50. Through the conduct described above, Steele Smith and C3 violated Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

51. Defendant knowingly or recklessly provided substantial assistance to Steele Smith and C3's violations of Section 17(a) of the Securities Act. He solicited investors and provided them with documents created by Steele Smith and C3 that contained materially false and misleading statements as discussed above. He reviewed the documents and was aware of their contents, and knew or was reckless in not knowing that the statements in them were materially false and misleading. The duped investors provided funds to C3 and Steele Smith. Defendant received commissions from his sale of C3 securities.

52. Pursuant to Section 15(b) of the Securities Act [15 U.S.C. § 77o(b)], Defendant is deemed to be violation of Section 17(a) of the Securities Act to the same extent as Steele Smith and C3 and, unless enjoined, will again aid and abet violations of those provisions.

### FOURTH CLAIM FOR RELIEF

### Aiding and Abetting

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5

53. The Commission realleges and incorporates by reference paragraphs 1

through 40 above.

54. Through the conduct described above, Steele Smith and C3 violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

55. Defendant knowingly or recklessly provided substantial assistance to Steele Smith and C3's violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. He solicited investors and provided them with documents created by Steele Smith and C3 that contained materially false and misleading statements as discussed above. He reviewed the documents and was aware of their contents, and knew or was reckless in not knowing that the statements in them were materially false and misleading. The duped investors provided funds to C3 and Steele Smith.

56. Pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t], Defendant is deemed to be in violation of Section 10(b) of the Exchange Act and Rule 10b-5 to the same extent as Steele Smith and C3 and, unless enjoined, will again aid and abet violations of those provisions.

## FIFTH CLAIM FOR RELIEF

### Unregistered Offer and Sale of Securities

### Violations of Sections 5(a) and 5(c) of the Securities Act

57. The Commission realleges and incorporates by reference paragraphs 1 through 40 above.

58. Defendant directly and indirectly offered and sold C3 stock, and was a necessary participant and substantial factor in C3's offers and sales of C3 stock.

59. By virtue of the foregoing, (a) without a registration statement in effect as to that security, Defendant, directly and indirectly, made use of the means and instruments of transportation or communications in interstate commerce and of the mails to sell securities through the use of medium of a prospectus or otherwise, and (b) made use of the means and instruments of transportation or communication in interstate commerce and of the mails to offer to sell through the use of a prospectus or

otherwise, securities as to which no registration statement had been filed.

60. By reason of the foregoing, Defendant directly or indirectly violated, and unless restrained and enjoined, will continue to violate, Section 5 of the Securities Act [15 U.S.C. § 77e].

## SIXTH CLAIM FOR RELIEF

### Unregistered Broker-Dealer

### Violations of Section 15(a) of the Exchange Act

61. The Commission realleges and incorporates by reference paragraphs 1 through 40 above.

62. Defendant, while acting as a broker or dealer, made use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any securities in the form of purchase agreements, promissory notes, or similar agreements without being registered with the Commission as a broker or dealer or an associated person of a registered broker-dealer.

63. By reason of the foregoing, Defendant violated and, unless restrained and enjoined, will continue to violate Exchange Act Section 15(a) [15 U.S.C. § 78o(a)].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment finding that Defendant committed the securities law violations alleged in this Complaint and:

### I.

Permanently enjoin Defendant from directly or indirectly violating Sections 5 and 17(a) of the Securities Act [15 U.S.C. §§ 77e, 77q(a)], and Sections 10(b) and 15(a) of the Exchange Act [15 U.S.C. § 78j(b)], and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5];

**II.**

Permanently enjoin Defendant from directly or indirectly, including, but not limited to, through any entity owned or controlled by him, soliciting any person or entity to purchase or sell any security; provided, however, that such injunction shall not prevent him from purchasing or selling securities for his own personal account;

**III.**

Order that Defendant disgorge any and all ill-gotten gains, together with pre-judgment and post-judgment interest, derived from the securities law violations set forth in this Complaint;

**IV.**

Order Defendant to pay civil penalties under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)];

**V.**

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court; and

//
//
//
//
//
//
//
//
//
//

## VI.

Grant such other and further relief as this Court may determine to be just and necessary.

In accordance with Fed. R. Civ. P. 38 and C.D. Cal. L.R. 38-1, Plaintiff U.S. Securities and Exchange Commission hereby demands a jury trial on all issues so triable.

Dated: August 24, 2022

/s/ *Derek Bentsen*
Derek S. Bentsen
Timothy N. England
Stephen T. Kaiser
Elizabeth Marshall Anderson
Daniel O. Blau
Attorneys for Plaintiff
Securities and Exchange Commission