UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL     'O'

| Case No. | 2:22-cv-05991-CAS (PDx) | Date | November 18, 2024 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Nicolas Arkells | | |

Present: The Honorable **CHRISTINA A. SNYDER**

| Catherine Jeang | Deborah Parker | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:
   Derek Bentsen
   Stephen Kaiser

Attorneys Present for Defendants:
   John Cox

**Proceedings:** ZOOM HEARING RE: MOTION FOR JUDGMENT AND MONETARY REMEDIES (Dkt. 39, filed on September 16, 2024)

## I. INTRODUCTION

On August 24, 2022, plaintiff United States Securities and Exchange Commission ("SEC") filed this action against defendant Nicolas Arkells ("Arkells" or "defendant"). Dkt. 1 ("Compl."). The SEC asserts six claims for relief: (1) fraud in connection with the purchase or sale of securities in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5; (2) fraud in the offer or sale of securities in violation of Sections 17(a)(1), (2), and (3) of the Securities Act of 1993 ("Securities Act"), 15 U.S.C. § 77q(a); (3) aiding and abetting in violation of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a); (4) aiding and abetting in violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5; (5) unregistered offer and sale of securities in violation of Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. § 77e; and (6) acting as an unregistered broker dealer in violation of Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a). Compl. ¶¶ 41-63.

On May 22, 2023, this case was consolidated with SEC v. C3 International, No. 21-CV-01586-CAS-PDx. On May 6, 2024, Arkells consented to entry of Judgment. Dkt. 33. On May 7, 2024, judgment was entered against Arkells in this matter. Dkt. 34.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      'O'

| Case No. | 2:22-cv-05991-CAS (PDx) | Date | November 18, 2024 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Nicolas Arkells | | |

On September 16, 2024, the SEC filed the instant motion for judgment and monetary remedies. Dkt. 39 ("Mot."). On October 16, 2024, Arkells filed an opposition. Dkt. 41 ("Opp."). On October 28, 2024, the SEC filed its reply. Dkt. 43 ("Reply").

On November 18, 2024, the Court held a hearing. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II. BACKGROUND

The Consent Judgment signed by Arkells prevents him from contesting the facts alleged in the SEC's complaint. Dkt. 33 ¶ 5. Accordingly, the Court treats the facts in the complaint as true for the purposes of this motion.

Defendant participated in the fraudulent offering and sale of securities of C3 International, Inc. ("C3"), which was purportedly a medical cannabis company, but which he knew had no cannabis growing facility, any products to offer for sale, or any revenue. Compl. ¶¶ 5-6. Arkells was employed by C3 as its Chief of Strategy and Business Development. Id. ¶ 11. Arkells offered and sold approximately $477,500 worth of securities to at least six investors during the period from July to December 2018, all of whom lost their investments. Id. ¶ 5. Defendant was paid $66,205 in commissions on the sales he made. Id.

Defendant knew or was reckless in not knowing that the documents created by C3's CEO Steele Smith, which he provided to prospective investors, were materially false and misleading because he reviewed these documents before sending them. Id. ¶¶ 6, 17. Arkells made false assurances along with the documents he sent to prospective investors. Id. ¶ 22. Arkells also falsely claimed that C3 had received $30 million in funding, and provided a script to other employees to make the same misrepresentation, knowing this to be untrue. Id. ¶¶ 27-29.

The SEC also filed a civil lawsuit against C3, Steele Smith, C3's CEO and CFO, and Theresa Smith, the co-founder of C3 and its president. Id. ¶¶ 12-14.

## III. LEGAL STANDARD

### A. Disgorgement and Prejudgment Interest

District courts have "broad equity powers to order the disgorgement of ill-gotten gains obtained through the violation of the securities laws." SEC v. Platforms Wireless

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'

| Case No. | 2:22-cv-05991-CAS (PDx) | Date | November 18, 2024 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Nicolas Arkells | | |

Int'l Corp., 617 F.3d 1072, 1096 (9th Cir. 2010). Section 21(d)(7) of the Exchange Act expressly authorizes "any Federal Court" to order disgorgement in "any action or proceeding brought by the Commission under any provision of the securities laws." 15 U.S.C. § 78u(d)(7). The SEC has authority to seek disgorgement "that does not exceed a wrongdoer's net profits." Liu v. SEC, 140 S. Ct. 1936, 1940 (2020).

### B. Civil Penalties

District courts determine the amount of civil penalties to impose "'in light of the facts and circumstances' of the case." SEC v. Husain, 70 F.4th 1173, 1184 (9th Cir. 2023) (quoting 15 U.S.C. §§ 77t(d)(2)(A), 78u(d)(3)(B)(i)). "Like a permanent injunction, civil penalties are imposed to deter the wrongdoer from similar violations in the future; therefore the factors listed in SEC v. Murphy [ ] apply." SEC v. Abacus Intern. Holding Corp., No. 99-CV-02191, 2001 WL 940913, at *5 (N.D. Cal. Aug. 16, 2001) (citing SEC v. Murphy, 626 F.2d 633 (9th Cir. 1980)). The Murphy factors include: (1) the degree of scienter involved; (2) the isolated or recurrent nature of the violation; (3) defendant's recognition of the wrongful nature of his conduct; (4) the likelihood of future violations because of defendant's professional occupation; and (5) the sincerity of assurances by defendant against future violations. Husain, 70 F.4th at 1184 (citing Murphy, 626 F.2d 633)

## IV. DISCUSSION

### A. Disgorgement

The SEC argues that Arkells should be required to pay disgorgement equal to the commissions he received. Mot. at 3. The Supreme Court's decision in Liu v. SEC, the SEC argues, reaffirmed the SEC's "authority to seek and the Court's authority to order disgorgement 'that does not exceed a wrongdoer's net profits and is awarded for victims.'" Id. (quoting Liu v. SEC, 591 U.S. 71, 75 (2020)). The SEC argues that Sections 21(d)(3) and 21(d)(7) of the Exchange Act specifically authorize the SEC to seek disgorgement of unjust enrichment that results from violation of the federal securities laws. Id. at 4 (citing 15 U.S.C. §§ 78u(d)(3), (7)). According to the SEC, "[o]nce the SEC establishes a reasonable approximation of disgorgement, the burden shifts to the defendant to show the calculation is not appropriate." Id. (citing Platforms Wireless, 617 F.3d at 1096). The SEC argues that the disgorgement it requests is permissible. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      'O'

| Case No. | 2:22-cv-05991-CAS (PDx) | Date | November 18, 2024 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Nicolas Arkells | | |

The SEC argues that Arkells received $66,205 for his fraudulent, unregistered sales of C3 securities, as demonstrated by checks from C3 to Arkells showing his commissions. Id. This, the SEC argues, is "evidence sufficiently demonstrating a 'reasonable approximation' of Arkells' ill-gotten gains, which if recovered, could be used to compensate the [d]efendant's victims." Id. (citing SEC v. Motty Mizrahi, et al., No. 19-CV-2284-PA-JEMX, 2020 WL 6114913, at *2 (C.D. Cal. Oct. 5, 2020)). The SEC contends that there are no legitimate business expenses that should be deducted in the requisite calculation of net profits and that Arkells has offered no such evidence in the course of this litigation. Id. The SEC argues that C3 was "a wholly fraudulent enterprise not entitled to any deductions." Id. at 5. Additionally, the SEC argues that Arkells should pay prejudgment interest on the $66,205 in disgorgement. Id. A prejudgment interest award, the SEC argues, is intended to ensure that the wrongdoer does not receive the equivalent of an interest free loan obtained by illegal activity. Id. (citing SEC v. Moran, 944 F. Supp. 286, 295 (S.D.N.Y. 1996)). Accordingly, the SEC argues, Arkells should be ordered to pay a total of $86,043.65, which is the amount of disgorgement plus interest from January 2019, when Arkells received his last commissions, through March 31, 2024, the end of the quarter before Arkells signed his consent judgment. Id.

In opposition, Arkells argues that the SEC's request for disgorgement is both excessive and unwarranted. Opp. at 6. Arkells argues that because in the time during which he was employed by C3 he should have received $82,500 in salary through normal payments, but instead received only the $66,205 in commissions, he "should be entitled to a reduction of the disgorgement amount based upon the salary he should have received through his employment agreement," and therefore the request for disgorgement should be denied, or the amount "significantly reduced." Id. Because the Ninth Circuit has said that disgorgement is meant to prevent unjust enrichment, Arkells argues, it would not make sense to require disgorgement when the payments he received in commissions were less than what he his employment contract promised in salary. Id. (citing Platforms Wireless, 617 F.3d at 1096).

Arkells also argues that the SEC's request for prejudgment interest should be denied or reduced because the SEC delayed bringing this action for four years, delayed by the COVID pandemic and the actions of C3 and the Smith defendants, and the Ninth Circuit "has recognized that significant delays by the SEC can render prejudgment interest inequitable." Id. at 7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:22-cv-05991-CAS (PDx) | Date | November 18, 2024 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Nicolas Arkells | | |

In reply, the SEC argues that Arkells "provides no authority for the proposition that disgorgement of ill-gotten gains should be offset by unpaid salary, and the SEC is unaware of any such authority." Reply at 1. The SEC argues that Arkells' reliance on Liu v. SEC is misplaced because that case established that courts should deduct legitimate expenses from the disgorgement amount, but here, "Arkells' claimed back-salary for his admitted role in promoting a fraudulent scheme is neither legitimate nor an expense." Id. (citing Liu, 591 U.S. at 91-92). The SEC contends that it would be "entirely circular" for a perpetrator of fraud to be able to deduct from disgorgement the amount of a salary owed for perpetrating the fraud that led to disgorgement. Id. at 2. The SEC argues that the Ninth Circuit has ordered disgorgement of salary when that salary was paid using the proceeds of an offering fraud. Id. (citing SEC v. First Pac. Bancorp., 142 F.3d 1186, 1192 (9th Cir. 1998); SEC v. Global Express Capital Real Estate Inv. Fund, I, LLC, 289 Fed. Appx. 183, 190 (9th Cir. 2008)).

The SEC argues that prejudgment interest is appropriate and that Arkells' cited authority for the proposition that the SEC allowed too much time to pass between the conduct and the commencement of this action does not in fact support his argument because the cases on which he relies do not deal with prejudgment interest. Id. at 2. The SEC argues that there is no evidence, and Arkells provides none, for the proposition that "the SEC was somehow dilatory in discovering, investigating, and ultimately pursuing this case in district court." Id. The Ninth Circuit, the SEC argues, has held that prejudgment interest is appropriate even in cases where the litigation was prolonged by the conduct of the SEC because the defendant was able to use his unlawful profits for the whole period. Id. at 3 (citing Platforms Wireless, 617 F.3d at 1100 (quoting SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1477 (2d Cir. 1996))). The SEC also contends that Arkells could have had the case bifurcated, but chose not to do so until recently. Id. at 2-3.

The Court has discretion to order disgorgement of ill-gotten gains that a defendant obtains through violation of securities laws. Platform Wireless, 617 F.3d at 1096. The Court finds that disgorgement of the amount Arkells received in commissions is appropriate in this case because the commissions were earned as a result of Arkells' unlicensed and fraudulent sale of securities. Compl. ¶ 5. As the SEC argues, no deductions are appropriate here because the underlying business was fraudulent, and therefore, there are no legitimate business expenses to deduct from defendant's net profits. Mot. at 5; Liu, 591 U.S. at 91-92.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL   'O'

| Case No. | 2:22-cv-05991-CAS (PDx) | Date | November 18, 2024 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Nicolas Arkells | | |

The Court finds that the SEC's requested disgorgement is neither excessive nor unwarranted as Arkells argues. Opp. at 6. The Court does not agree that because Arkells did not receive the salary he was promised in his employment agreement, $82,500 over the relevant period, he should be entitled to keep the commissions he earned as a substitute for the promised salary. Defendant cites no authority for the proposition that because he did not receive the salary he was promised, he was not unjustly enriched by receiving the $66,205 in commissions. Opp. at 4. Liu v. SEC established that courts should deduct legitimate expenses from the disgorgement amount, but as the SEC argues, Arkells' salary is not a legitimate expense because he was employed for the sole purpose of perpetrating a fraudulent scheme. Liu, 591 U.S. at 91-92; Mot. at 1.

The Court also finds that prejudgment interest is appropriate in this case. Prejudgment interest may be awarded to ensure that the wrongdoer does not profit from the illegal activity. SEC v. Cross Financial Services, Inc., 908 F. Supp. 718, 734 (C.D. Cal. 1995). Indeed, an award of prejudgment interest prevents a defendant from obtaining the benefit of what amounts to an interest free loan procured as a result of illegal activity. Moran, 944 F. Supp. at 295. Defendant argues that prejudgment interest is inappropriate given the SEC's delay in filing this matter, opp. at 7; however, as the SEC notes, the Ninth Circuit has said that "even if defendant[] were correct that the present litigation were protracted through some fault of the SEC, defendant[] plainly had use of [his] unlawful profits for the entire period …." Platforms Wireless, 617 F.3d at 1100. Therefore, the Court finds that prejudgment interest of $19,838.65, calculated from January 2019 when Arkells received his final commissions to March 31, 2024, the end of the quarter before Arkells signed his consent, is appropriate in this case.

Accordingly, the Court grants the SEC's request for $66,205 of disgorgement and $19,838.65 in prejudgment interest, for a total of $86,043.65.

### B.   Civil Penalties

The SEC argues that Arkells should be required to pay a civil penalty because his violations of the Securities Act and the Exchange Act render him liable for penalties under Section 20(d)(1) and Section 21(d)(3)(A) of those Acts, respectively. Mot. at 5. The SEC argues that because civil penalties are imposed to deter similar wrongful conduct in the future, courts look to the five factors from SEC v. Murphy to determine whether such penalties are appropriate. Id. at 6 (citing Murphy, 626 F.2d 633). According to the SEC, the Securities Act and the Exchange Act establish that penalties

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:22-cv-05991-CAS (PDx) | Date | November 18, 2024 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Nicolas Arkells | | |

should be assessed according to a three-tiered system, including an amount up to defendant's pecuniary gain. Id. (citing 15 U.S.C. §§ 77t(d)(2), 78u(d)(3)(B)).

According to the SEC, the Murphy factors favor imposing a civil penalty on Arkells. Id. The first two factors, the degree of scienter involved and the isolated or recurrent nature of the infraction, the SEC argues favor a penalty because "Arkells acted with a high degree of scienter and did so repeatedly as he made knowing misrepresentations about an effectively defunct business being successful over the course of approximately six months that resulted in investor losses of $477,500." Id. (citing Murphy, 626 F.2d at 655; Compl. ¶ 5). The third and fifth factors, the defendant's recognition of his wrongful conduct and the sincerity of his assurances against future violations, the SEC argues also favor a penalty because Arkells "has offered no recognition [of] the wrongful nature of his misconduct. Id. at 6-7 (citing Murphy, 626 F.2d at 655). Therefore, the SEC argues that a penalty equal to Arkells' gross pecuniary gain of $66,205 is both reasonable and well-tailored to the relevant conduct. Id. at 7 (citing authority for the proposition that courts often authorize civil penalties equal to the disgorgement amount). The SEC contends that the "proposed penalty is less than even a single statutory second-tier penalty amount of $115,231," and is therefore reasonable. Id.

In opposition, Arkells argues that the imposition of civil penalties is not warranted because he was merely reckless in "not understanding much earlier that the information he was sending to investors at Mr. Smith's direction was false," and that while he should have acted sooner, he did eventually inform Kirk Miller, an investor, of the fraud. Opp. at 7. Arkells argues that civil penalties are meant to punish and prevent intentional misconduct, but that his conduct was reckless and he acted without an intent to defraud. Id. Arkells argues that courts in the Ninth Circuit have reduced or denied penalties on this basis. Id. (citing SEC v. Dain Rauscher, Inc., 254 F.3d 852, 856 (9th Cir. 2001)).

Arkells also argues that he is unable to pay the civil penalties sought by the SEC and that he has "suffered financially for many years during the pendency of this investigation" and that "any civil penalty imposed would be unduly burdensome and inequitable." Id. at 8.

In reply, the SEC argues that Arkells' arguments that he acted recklessly and cannot afford civil penalties and thus they should not be imposed on him are not supported by the facts of the case or the law. Reply at 3. The SEC contends that Arkells was aware that C3 had no actual business and yet sent information to potential investors

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:22-cv-05991-CAS (PDx) | Date | November 18, 2024 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Nicolas Arkells | | |

that was false or misleading, which the SEC argues goes beyond recklessness and "demonstrates ongoing knowing intent to defraud." Id. (citing SEC v. Yang, 2021 WL 1234886, at *10 (C.D. Cal. Feb. 16, 2021) aff'd sub nom. SEC v. Yang, 2022 WL 3278995 (9th Cir. Aug. 11, 2022)). The SEC argues that a penalty is appropriate here for both purposes that such penalties serve: punishment and deterrence. Id. at 4. The SEC argues that the amount is reasonable, given it is much less than the statutory penalty of $115,231 that can be imposed on a natural person for a violation involving fraud. Id.

The SEC also argues that Arkells has the burden of showing the Court that his financial condition should be considered. Id. (citing SEC v. Milan Group, Inc., 124 F. Supp. 3d 21, 26 (D.D.C. 2015)). The SEC contends that Arkells' assertion of his inability to pay and claim that he is currently unemployed do not satisfy this burden. Id.

The Court concludes that civil penalties are inappropriate in this case. Looking to the Murphy factors, the Court finds that though Arkells provided false information to investors, some of which was prepared by Smith and some of which was written by Arkells himself, compl. ¶ 22, he was inexperienced in securities markets and had never had "real employment in the private sector" before. Opp. at 3. The Court finds that these facts mitigate the degree of scienter with which Arkells acted. As to the second and third factors, once defendant recognized the wrongful nature of the conduct, he disclosed it to Kirk Miller, in violation of his non-disclosure agreement with C3. Id. at 4. The Court concludes that this disclosure supports the notion that the conduct was isolated and terminated when defendant realized his wrongdoing, and that he did ultimately recognize the wrongful nature of his conduct. As to the fourth factor, defendant is currently employed in construction, rendering future violations unlikely. Opp. at 5. The Court is not aware of any assurances made by Arkells against future violations.

Accordingly, looking to the facts and circumstances of the case, as guided by the Murphy factors, the Court concludes that the civil penalties the SEC requests are inappropriate in this case.

///

///

///

///

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'

| | | | |
|---|---|---|---|
| Case No. | 2:22-cv-05991-CAS (PDx) | Date | November 18, 2024 |
| Title | Securities and Exchange Commission v. Nicolas Arkells | | |

## V. CONCLUSION

In accordance with the foregoing, the Court **GRANTS** the SEC's request for disgorgement of $66,205 and prejudgment interest of $19,838, for a total amount of $86,043.65. The Court **DENIES** the SEC's request for civil penalties.

The SEC is directed to submit a form of judgment consistent with this Order.

IT IS SO ORDERED.

|  |  | 00 | : | 22 |
|---|---|---|---|---|
|  | Initials of Preparer | | CMJ | |